United States District Court
Southern District of Texas
**ENTERED**
January 29, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MAHLET ABATE ABUNU | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:25-cv-251 |
| | § | |
| ORLANDO PEREZ *et al.* | § | |

## ORDER

Petitioner, an Ethiopian national in ICE custody, brings this 28 U.S.C. § 2441 Petition challenging her continued detention despite being granted withholding of removal (Dkt. No. 1). Following an exhaustive review of the law and facts, the Court **GRANTS IN PART** the Petition.

## I.     BACKGROUND

Petitioner fled her country when Ethiopian government officials persecuted her because of her Amhara ethnicity and their mistaken belief that she supported an anti-government group (Dkt. Nos. 1 at 5, ¶ 14; 1-2 at 2, ¶ 6). She entered the United States on January 8, 2025, and has been detained since (Dkt. Nos. 1 at 6 n.1; 1-2 at 2, ¶ 5; 13-2 at 2-3; 13-3 at 1).

Petitioner sought political asylum and withholding of removal (Dkt. Nos. 1 at 7, ¶ 20; 13 at 2). On May 29, 2025, an Immigration Judge ("IJ") ordered Petitioner removed from the United States but simultaneously granted her withholding of removal to Ethiopia (Dkt. Nos. 1 at 7; 1-1 at 2; 13 at 2). The IJ did not designate any other country for removal and noted that Petitioner would have been granted political asylum if not for limitations under the Circumvention of Lawful Pathways rule (Dkt. No. 1-1 at 4). All parties waived appeal (Dkt. No. 1-1 at 5).

Officials completed Petitioner's 90-day Post Order Custody Review (POCR) on

October 17, 2025, more than 90 days after the IJ's order of removal, and sent her 180-day POCS for review on December 13, 2025 (Dkt. No. 13-5, at 2–3, ¶¶ 11, 13).[1] They provide no details or records from either review.

Petitioner is in custody at the Laredo Processing Center. At the time she filed her petition, she had been detained for 188 days after the IJ's order and over 300 days since she entered detention in January 2025 (Dkt. Nos. 1 at 6 n.1; 1-2 at 2, ¶ 12; 13-5 at 2, ¶ 3). She states that an immigration officer told her in June 2025 that she would be removed to a third country but never identified any country that would accept her (Dkt. No. 1-2 at 2, ¶¶ 8–9). Respondents moved to dismiss the petition (Dkt. No. 13). Petitioner replied (Dkt. No. 14) and filed a notice of supplemental authority (Dkt. No. 18).

## LEGAL STANDARDS

### A.  28 U.S.C. § 2241

Under 28 U.S.C. § 2241(c)(3), a detainee may seek habeas relief if they are "in custody in violation of the Constitution or laws or treaties of the United States." "The petitioner 'bears the burden of proving that [she] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [her] burden of proof by a preponderance of the evidence.'" *Puertas-Mendoza v. Bondi*, No. SA-25-CV-00890-XR, 2025 WL 3142089, at *1 (W.D. Tex. Oct. 22, 2025) (Rodriguez, J.) (quoting *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025)).

A court entertaining a habeas petition shall immediately "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." § 2243. A court need not hold a hearing if the habeas petition "raises only questions of

---

[1] According to DHS regulations, a district director is required to conduct a PCOS before the 90-day removal period lapses, if the alien's removal cannot be accomplished during the removal period. 8 C.F.R. § 241.4(k)(1)(i). Respondents do not offer any insight regarding their failure to timely conduct the review.

law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989); *see also Gomez-Simeon v. Bondi*, No. SA-25-CV-01460-JKP, 2025 WL 3470872, at *1, *6 (W.D. Tex. Nov. 24, 2025) (Pulliam, J.) (granting habeas petition without a hearing); *Puertas-Mendoza*, 2025 WL 3142089, at *1, *5 (same).

## B. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move for dismissal of a suit, arguing the court lacks subject matter jurisdiction. "The party asserting jurisdiction 'constantly bears the burden of proof that jurisdiction does in fact exist.'" *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "The motion should be granted only if it appears certain the plaintiff cannot prove any set of facts that would entitle [them] to recovery." *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

## C. Federal Rule of Civil Procedure 12(b)(6)

Courts have found "that use of Rule 12(b)(6) in [the] habeas context is inconsistent with the habeas rules." *Ndudzi v. Castro*, No. SA-20-CV-0492-JKP, 2020 WL 3317107, at *9 (W.D. Tex. June 18, 2020); *Olya v. Garite*, No. EP-25-CV-00083-DCG, 2025 WL 3254931, at *3 n.32 (W.D. Tex. Oct. 14, 2025). Accordingly, "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas." *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (citing *Browder v. Director, Dep't of Corrections of Ill.,* 434 U.S. 257, 269 n.14 (1978)).

## II.    DISCUSSION

In their motion to dismiss, Respondents raise three issues: (1) Petitioner can be

removed to a country other than Ethiopia; (2) Petitioner's prolonged detention is lawful; and (3) the Court lacks jurisdiction to review claims regarding execution of removal orders. Recognizing its duty to address subject matter jurisdiction at the outset, the Court begins with Respondents' third point. *See Fort Bend County v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 188 (5th Cir. 2023) (citing *Ramming*, 281 F.3d at 161) (generally courts must analyze subject matter jurisdiction before evaluating the merits).

## A.  Subject Matter Jurisdiction

Respondents argue that 8 U.S.C. § 1252 deprives the Court of jurisdiction to review claims regarding the execution of removal orders (Dkt. No. 13 at 10–12). Petitioner responds that Section 1252's provisions do not strip the Court of jurisdiction to review her due process claim (Dkt. No. 14 at 13–16). The Court agrees.

As Petitioner highlights, she is *not* contesting her removability, but rather her indefinite detention and ICE's means of executing her removal order (Dkt. No. 14 at 14, 16). 8 U.S.C. § 1252(g) confers exclusive jurisdiction to the executive branch for three discrete reasons: to commence removal proceedings; to adjudicate cases; and to execute removal orders. Absent from this list are "challenges to the manner in which ICE executes the removal order." *Sagastizado v. Noem (Sagastizado I)*, No. 5:25-CV-00104, 2025 WL 2957003, at *2 (S.D. Tex. Sept. 10, 2025) (Saldaña, J.) (quoting *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d, 137, 152 (W.D.N.Y. May 2, 2025)). Because Petitioner seeks due process review *following* ICE's decision to execute her removal order, § 1252(g) does not bar the Court's jurisdiction.

Similarly, 8 U.S.C. § 1252(a)(5) and (b)(9), statutory provisions concerning judicial review, do not strip the Court's habeas jurisdiction. Indeed, the Fifth Circuit has made clear that "[w]here review of an agency determination involves *neither* a determination

as to the validity of [the petitioner's] deportation orders or the review of any question of law or fact arising from their deportation proceedings, § 1252(a)(5) and (b)(9) should not operate as a bar to the district court's review." *Duarte v. Mayorkas*, 27 F.4th 1044, 1056 (5th Cir. 2022). In other words, if, as here, a petitioner disputes the process due *following* a deportation proceeding, then § 1252(a)(5) and (b)(9) are a non-issue. *Jennings v. Rodriguez*, 583 U.S. 281, 291–93 (2018) (rejecting the view that § 1252(b)(9) applies to bar "prolonged detention" claims); *Mahdejian v. Bradford*, No. 9:25-CV-00191, 2025 WL 2269796, at *3 (E.D. Tex. July 3, 2025); *Sagastizado v. Noem (Sagastizado II)*, 802 F. Supp. 3d 992, 1005 (S.D. Tex. 2025) (Saldaña, J.); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting that habeas remains the "basic method for obtaining review of continued custody after a deportation order ha[s] become final").

The Court thus exercises subject matter jurisdiction over Petitioner's indefinite detention claims and moves to the merits.

### B. Merits of Habeas Petition

Petitioner raises claims: (1) challenging her indefinite detention under the Immigration and Nationality Act ("INA") and the Due Process Clause; and (2) opposing any future third-country removal absent notice and an opportunity to be heard (Dkt. No. 1 at 13–15). For the former, she seeks release (Dkt. Nos. 1 at 15; 14 at 16). As to the latter, she requests the Court order Respondents to provide "notice of the third country to which Respondents intend to remove her, and confirmation from that third country that it has agreed to accept [her], with at least 10 days' notice, in writing, before any removal is initiated" (Dkt. No. 1 at 16). The Court merges the INA and due process analysis.

1.  Indefinite Detention and *Zadvydas v. Davis*, 533 U.S. 678 (2001)

Pursuant to the INA, the Government ordinarily secures the removal of an alien during the statutory 90-day period following an order of removal. 8 U.S.C. § 1231(a)(1)(A). As relevant here, the removal period begins to run on "[t]he date the order of removal becomes administratively final." § 1231(a)(1)(B)(i). Aliens are generally detained during the removal period. § 1231(a)(2)(A).

If the alien is not removed during this statutory 90-day period, the Government may continue to detain them for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Reasonableness should be measured "in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. To aid in this determination, the Supreme Court set a presumptively reasonable six-month period of post-removal detention. *Id.* at 701. Beyond that point, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Id.* (citation modified). It is axiomatic, however, that the Constitution forbids an alien's indefinite or permanent post-removal detention. *Id.* at 689.

a.  *Presumptively Reasonable Period of Detention*

As a threshold matter, the Court must determine whether Petitioner has been detained for the presumptively reasonable six-month period.[2] Petitioner's removal order became final on the date it was issued, May 29, 2025, because all parties waived appeal

---

[2] Nothing in this statement should be construed as expressing the Court's view on whether the presumption is rebuttable.

(Dkt. Nos. 1 at 7, ¶ 22; 1-1 at 5). Therefore, Petitioner's post-removal detention commenced on May 29, 2025—six months and four days before she filed her Petition (*see* Dkt. No. 1 (Petition was filed on December 3, 2025)). Up to the date of this Order, Petitioner has been detained approximately eight months after her final order of removal.

b. *Petitioner's Burden*

Having found that Petitioner has been detained beyond the presumptively reasonable period, she need only demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 699. Although the Fifth Circuit instructed that an alien's onus extends beyond "conclusory statements," there is no further binding guidance. *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006). At any rate, Petitioner's sworn declaration, which explains her immigration proceedings and officials' actions after her final order of removal (Dkt. No. 1-2 at 2, ¶¶ 6–10), along with the Respondents' tendered evidence, satisfies her burden.

First, third-country removals are exceedingly rare. In fiscal year 2017, "only 1.6% of aliens who were granted withholding of removal were actually removed to an alternative country." *Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) (citation omitted). Indeed, aliens with withholding of removal status "typically remain[ ] in the United States for the foreseeable future." *Id.* at 552 (Breyer, J., dissenting). This makes sense, as foreign countries have little incentive to accept aliens with no connections to their country. *See Puertas-Mendoza*, 2025 WL 3142089, at *3 ("[F]oreign governments 'routinely deny' requests to receive people who lack a connection to the would-be receiving country.").

Aside from the rarity of third-country removals, ICE attempted to remove Petitioner to no avail. By Respondents' own account, officials submitted I-241 requests to

El Salvador, Costa Rica, and Panama on June 20, 2025, but all three countries declined to accept Petitioner (Dkt. No. 13-5 at 2, ¶ 8). Although over six months have elapsed since the first set of requests were submitted, Respondents do not list any additional requests or identify an additional third country. Rather, an ICE official's declaration states, without elaboration, that Petitioner "is currently on a list for Third Country Removals with the Department of State" and that immigration officials are "awaiting the Department of State assistance" (Dkt. No. 13-5 at 2, ¶ 10; *see* Dkt. No. 13-5 at 3, ¶ 12). Regardless, standing alone, pending requests are "insufficient to show that [Petitioner's] removal is likely to occur in the reasonably foreseeable future." *Garcia-Aleman v. Thompson*, No. SA-25-CV-886-OLG (HJB), 2025 WL 3534806, at *5 (W.D. Tex. Nov. 24, 2025), *report and recommendation adopted*, No. SA-25-CV-00886-OLG, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025); *Trejo v. Warden of ERO El Paso E. Mont.*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *5–6 (W.D. Tex. Oct. 24, 2025). To date, none of the Government's requests yielded results, significantly undercutting any likelihood that her removal is foreseeable.

Finally, Petitioner is an Ethiopian citizen with no meaningful ties to any other country (Dkt. No. 1-2 at 2, ¶¶ 3-4). *See Misirbekov v. Venegas (Misirbekov I)*, 793 F. Supp. 3d 892, 895 (S.D. Tex. 2025) (Olvera, J.) (finding a lack of connection to any country besides the alien's country of origin to be significant); *see also Trejo*, 2025 WL 2992187, at *5. Of course, ICE cannot legally return Petitioner to Ethiopia. § 1231(b)(3); *cf. Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002) (barriers to repatriation are significant if a petitioner makes the required showing). However, nothing precludes a third country from extraditing her to Ethiopia—where she will likely be persecuted. *See Trejo*, 2025 WL 2992187, at *5; *see also Sagastizado II*, 802 F. Supp. 3d at 1015

(discussing how once an alien is removed, non-refoulment may no longer be feasible). As this District recognized, "[i]t is in the public interest to prevent 'aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'" *Misirbekov v. Venegas (Misirbekov III)*, No. 1:25-CV-00168, 2025 WL 2450991, at *2 (S.D. Tex. Aug. 15, 2025) (Olvera, J.) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). This important consideration, taken with Petitioner's other evidence, persuades the Court that Petitioner carried her burden.

        c.   *Whether the Government Rebutted Petitioner's Showing*

Simply put, the Government's rebuttal efforts do not rise to the occasion. The Government rests on the unsubstantiated assertion that there is "a significant likelihood of removal within the reasonably foreseeable future to all countries" (Dkt. No. 13-5 at 2, ¶ 10).

What is more, Respondents have not proffered any evidence—let alone even alleged—that a foreign country has *ever* accepted an Ethiopian national deported from the United States. *See Trejo*, 2025 WL 2992187, at *6; *see also Hassoun*, 2019 WL 78984, at *5. While the Court recognizes that Petitioner had been detained for just over the presumptively reasonable period when she filed her Petition, Respondents' inability to secure Petitioner's removal to this point casts serious doubt on their ability to do so at all. Thus, Petitioner's removal is not reasonably foreseeable, and her continued confinement amounts to an unconstitutional, indefinite detention. *See Zadvydas*, 533 U.S. at 696, 699 (finding that neither the INA nor the Constitution authorizes indefinite detention); *see also Misirbekov III*, 2025 WL 2450991, at *1–2 (detention of alien for six months and sixteen days was unreasonable where alien had no citizenship or ties to another country besides his country of origin and he would face "political persecution, torture, and death" if returned there).

9

2.  Third-Country Removal

Looking to the future, Petitioner argues that the Due Process Clause requires "at least 10 days' notice and the name of the proposed country of removal in writing before any removal is initiated" (Dkt. No. 1 at 13). **<u>The Court will not resolve this issue, as it is separate and distinct from Petitioner's prolonged detention</u>**.[3]

## III.    CONCLUSION

For the foregoing reasons, Petitioner's habeas Petition (Dkt. No. 1) is **GRANTED IN PART**. Petitioner's *Ex Parte* Motion to Award the Writ or Issue an Order to Show Cause (Dkt. No. 3) is **DENIED AS MOOT**. Respondents' Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 13) is **DENIED**.

Respondents are **ORDERED** to **RELEASE** Petitioner from custody to a public place **<u>no later than 5:00 p.m. on January 30, 2026</u>**. Petitioner's release is subject to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.

Respondents are **ORDERED** to **NOTIFY** Petitioner's counsel of the exact location and exact time of her release as soon as practicable and **<u>no less than two hours before her release</u>**.

The parties are **ORDERED** to file a Joint Status Report **<u>no later than 5:00 p.m. on February 2, 2026</u>**, confirming that Petitioner has been released and advising the Court of her conditions of release.

The Court's prior **ORDER** that Respondents **NOTIFY** Petitioner's counsel and

---

[3] Petitioner presents DHS' Guidance Regarding Third Country Removals, issued March 30, 2025 (Dkt. 1-4). As Petitioner concedes, the Guidance applies to removal proceedings only after "the Department of State has received a credible diplomatic assurance that, broadly speaking, a third country will not persecute or torture individuals deported to that country" (Dkt. No. 1 at 8). Petitioner also underscores that her primary requested relief at this juncture is release (Dkt. No. 14 at 16).

the Court of any planned removal of her from the United States, at least five (5) days before any such removal, **REMAINS IN PLACE**.

It is so **ORDERED**.

**SIGNED** January 28, 2026.

Marina Garcia Marmolejo
United States District Judge